[No. 35651.    Department One.    August 31, 1961.]

GERALD W. KENT et al., as Coexecutors, Respondents, v.
JOHN L. WHITAKER, Appellant.*

Harold L. Hawkins and Keith D. McGoffin, for appellant.

Miracle, Treadwell & Pruzan, for respondents.

*Reported in 364 P. (2d) 556.

FOSTER, J.—In an action to recover damages for the suicide of Carol M. Kent, there was a judgment upon a verdict in favor of the plaintiffs. The appellant, John L. Whitaker, defendant in the trial court, is a physician and was the superintendent of the Pierce County Hospital at the time of the tragedy. The action is brought by the personal representatives of the deceased for the benefit of her surviving children. Dr. Whitaker appeals.

Mrs. Kent was a widow, forty-one years of age, who, until her death, was a teacher in the Eatonville public schools. On the morning in question, she attempted suicide in her bedroom. An unusual disturbance there attracted the attention of her son, who, after discovering her condition, called a physician, Dr. Nevitt. Dr. Nevitt telephoned the Pierce County Hospital, advising of Mrs. Kent's attempted suicide and that she would come there by ambulance. David Kent accompanied his mother in the ambulance to the hospital where she was admitted as a paying patient.

The Pierce County Hospital had no separate ward for the mentally ill but, nevertheless, hospitalized persons who had attempted suicide. The diagnosis on the hospital chart immediately upon Mrs. Kent's admission was "attempted suicide." This was known to the admitting physician and nurse. After a stomach lavage and other emergency treatment upon arrival at the hospital, Mrs. Kent was placed in a room barren except for the bed and the apparatus used for her treatment. Her condition required intravenous feeding. The apparatus used consisted of a bottle containing the fluid, a supporting standard, and a suitable length of plastic tubing.

The door of Mrs. Kent's room was locked, and all visitors were excluded. Members of Mrs. Kent's family asked to be allowed to remain with her, but this request was denied, and she was left alone although hospital attendants assured the family that she would be closely watched. There were peepholes in the door, but she was left unattended with the door locked.

From time to time the nurse observed her condition through the peepholes. On the evening of the day of ad-

mission, she was found in her locked hospital room strangled to death by the plastic tubing wrapped around her neck.

This is not a malpractice case. It does not rest upon either improper diagnosis or negligent treatment; but, on the other hand, the liability of the appellant hospital superintendent is based upon the failure of the specific duty of exercising reasonable care to safeguard and protect a patient with known suicidal tendencies from injuring herself.

■ The first four assignments of error deal with pretrial, trial, and post-trial motions but are not argued in the brief and are, therefore, abandoned and not considered.[1]

*Fulton v. Fulton*, 57 Wn. (2d) 331, 336, 357 P. (2d) 169, held:

"Appellant sets out several other assignments of error but he neglects to argue or discuss them in his brief. Rule on Appeal 42 (1) (f), RCW Vol. 0, provides that:

" 'Each error relied on shall be clearly pointed out and discussed under appropriately designated headings. . . .'

"We have held that assignments of error not argued are waived. See *Deer Park Pine Industry v. Stevens County*, 46 Wn. (2d) 852, 286 P. (2d) 98 (1955); *Winslow v. Mell*, 48 Wn. (2d) 581, 295 P. (2d) 319 (1956), and cases cited; *State v. Williams*, 49 Wn. (2d) 354, 301 P. (2d) 769 (1956)."

Eleven of appellant's assignments of error deal with the court's refusal to give appellant's requested instructions, but no requested instruction appears in the statement of facts.

■ Rule on Appeal 34(8), RCW Vol. 0, is as follows:

"In all cases whenever any error is predicated upon a ruling relative to an instruction given or proposed, it will be necessary to include in the statement of facts all of the instructions given by the court and those proposed instructions concerning which error is assigned."

[1]*Obde v. Schlemeyer*, 56 Wn. (2d) 449, 353 P. (2d) 672; *McDonald Credit Service v. Church*, 49 Wn. (2d) 400, 301 P. (2d) 1082; *Larson v. Duclos*, 46 Wn. (2d) 334, 281 P. (2d) 458; *Hill v. King County*, 41 Wn. (2d) 592, 250 P. (2d) 960.

*Porter v. Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 41 Wn. (2d) 836, 252 P. (2d) 306; *Sutton v. Mathews*, 41 Wn. (2d) 64, 247 P. (2d) 556; *State v. Wilson*, 38 Wn. (2d) 593, 231 P. (2d) 288; and *State v. Slater*, 36 Wn. (2d) 357, 218 P. (2d) 329, decide that errors respecting requested instructions not appearing in the statement of facts cannot be considered on appeal. Such assignments of error cannot be considered.

Appellant assigns error to the giving of the following instruction:

"You are instructed that where the managers of a hospital accepting paying patients, know or are warned of a patient's suicidal tendencies, they are required not only to use reasonable care in treating the patient for his or her illness, but also to safeguard him or her from self-inflicted injury or death. This duty is proportionate to the patient's needs, that is, such reasonable care and attention as the patient's known mental condition requires." Instruction No. 9.

The argument in support of this assignment is brief indeed, and is that it imposed a personal obligation upon appellant superintendent to treat the patient and to prevent her from committing suicide, and that the instruction does not state that the superintendent knew of Mrs. Kent's admission.

The evidence is that Mrs. Kent was admitted to the Pierce County Hospital as a paying patient, and the hospital's own record shows that the cause of the admission was attempted suicide. The negligence is not in diagnosis or treatment, but in the failure to observe the specific duty owing to the patient under such circumstances to protect her against her known suicidal tendencies.

The hospital furnished the plastic tubing with which Mrs. Kent strangled herself. She was placed in a locked room in which the only means of observation was a peephole in a door, and she was left in the charge of a nurse who had at least twelve other patients under her care. While the nurse attended the other patients, Mrs. Kent was left unattended and unobserved. The duty owing under such circumstances was simply stated by the appellate

division of the New York supreme court in *Daley v. State,* 273 App. Div. 552, 78 N.Y.S. (2d) 584:

"Under all these circumstances it seems to us that the State was negligent in caring for decedent. It had notice of his suicidal tendencies. It permitted him to remain unattended when he should have been closely supervised. It left unguarded the vat where the disaster occurred. It failed to exercise reasonable care for his supervision (*Curley v. State of New York,* 148 Misc. 336, affd. *sub nom. Luke v. State of New York,* 253 App. Div. 783; *Martindale v. State of New York,* 269 N.Y. 554)."

And the supreme court of Missouri likewise applied the same rule in *Stallman v. Robinson,* 364 Mo. 275, 260 S. W. (2d) 743. Its language is:

" . . . There is no claim or evidence of improper diagnosis and there is no claim or evidence that the appellants were negligent in their treatment of Mrs. Stallman's mental illness. The appellants, having accepted Mrs. Stallman as their patient, owed her the specific duty of exercising reasonable care to safeguard and protect her from injuring herself. Their duty in this regard was proportionate to her needs, that is, such reasonable care and attention as her known mental condition required. Annotation 11 A. L. R. (2) 751, 756, 778; Davis v. Springfield Hospital, 204 Mo. App. 626, 218 S. W. 696. Several factors have some bearing upon whether the appellants have discharged their specific duty but 'The most important single factor in determining whether or not a hospital was negligent in failing to prevent the suicide of a patient is whether or not the hospital authorities under the circumstances could reasonably have anticipated that the patient might harm himself.' Annotation 11 A. L. R. (2), 1.c. 782. And, whether these determinative factors are present depends upon the detailed facts and circumstances of the particular case.

" . . .

" . . . In some malpractice cases expert testimony may be necessary to demonstrate or prove negligence (annotation 141 A. L. R. 5) but in a case of this type where the question is whether the patient was reasonably safeguarded and protected, in the circumstances in view of her known condition, expert testimony is not essential. 'We do not think it was necessary for plaintiff to produce expert testimony on this subject. It was competent for the jury as laymen to determine this question, for the reason that

it does not necessarily involve any technical matter.' Bennett v. Punton Sanitarium Ass'n., supra [213 Mo. App. 363, 249 S. W. 666]. Or, as was pointedly said in the Michigan case [*Paulen v. Shinnick*, 291 Mich. 288, 289 N. W. 162], 'Determination of whether Miss Rose should have locked the screen before stopping to retrieve plaintiff's fallen thimble, or to have taken some other precaution to prevent plaintiff's escape, is not a question on which a jury requires the advise of trained psychiatrists.' In short, the evidence and the reasonable inferences were sufficient to support the plaintiff's claim, if found and accepted by the jury, and the appellants were not entitled to a directed verdict for any of the reasons urged upon this appeal."

■ The instruction complained of is immune to appellant's criticism that it required the appellant superintendent to personally care for the deceased. Nowhere in the instruction is there such a duty imposed upon him, but, under the statute, he is responsible for the "admission and proper care" of the hospital's patients. See, also, *Quick v. Benedictine Sisters Hospital Ass'n*, 257 Minn. 470, 102 N. W. (2d) 36; *United States v. Gray*, 199 F. (2d) 239; *Drefahl v. Connell*, 85 Wis. 109, 55 N. W. 160.

Appellant assigns error to the giving of the following instruction:

"An agent is a person who, by virtue of and pursuant to the circumstances of his employment, undertakes to represent a principal in dealings with third persons to manage some affair, or perform some service, for the principal, whether for compensation or gratuitously. The employment may be oral, written, express or implied.

"The test by which to determine whether at a given time one person was the agent of another is to ascertain whether or not at that time the former was subject to the orders and control of the latter and whether or not the latter had the right of control or the right to discharge the former for disobedience or misconduct.

"A principal is liable for damages resulting from the negligent acts of his agent." Instruction No. 10.

The argument is that the hospital employees were not the agents of the appellant. Reliance is placed upon *Pavish v. Meyers*, 129 Wash. 605, 225 Pac. 633, 34 A. L. R. 561, in which it was held that the chief of police was not liable for

the acts of a police officer unless such acts were personally directed by the chief of police.

■ But the principle enunciated in *Ulvestad v. Dolphin*, 152 Wash. 580, 278 Pac. 681, controls here. There, in an action for false arrest, the chief of police, who had no knowledge of the arrest of the plaintiff or his incarceration, was, nevertheless, held liable because the Seattle city charter made the chief of police "the keeper of the city prison."

Under RCW 36.62.230, the duties of the superintendent are quite similar. He is required to perform all administrative services necessary to the admission and proper care of persons admitted. It is as follows:

"The general superintendent shall be the chief executive officer of the hospital or institution and shall perform all administrative services necessary to the efficient and economical conduct of the hospital or institution and the admission and proper care of persons properly entitled to the services thereof as provided by law or by the rules and regulations of the board of trustees."

The argument in the *Ulvestad* case was the same as here. It is based upon *Pavish v. Meyers, supra,* that a public official is not liable for the acts of a subordinate. The chief of police had no knowledge of Ulvestad's arrest or incarceration. The direct question in issue was whether the charter provision rendered the police chief liable for the conduct of the jailers, notwithstanding he did not know of the plaintiff's arrest.

The court held the chief of police liable. It said:

". . . He cannot escape his obligations in this respect by placing the prison in the keeping of others. . . ."

Thus it is that fifteen of the seventeen assignments of error cannot be considered, and the remaining two are without merit.

The judgment is, therefore, affirmed.

FINLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur.