ROGER S. BRITTON *et al.*, Plaintiffs-Appellants, v. F. SOLTES, Defendant-Appellee.

First District (3rd Division) No. 1—89—0733

Opinion filed October 31, 1990.

944

FREEMAN, J., dissenting.

Daniel J. Rice, of Forest Park, for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Peter J. Mone, Mark L. Karasi, and Christopher T. Hurley, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

Appellants Wilma Britton, Roger David Britton, Michael S. Britton, and Daniel Lee Britton appeal from an order of the trial court granting summary judgment for appellee Dr. Francis Soltes. Appellants argue that the trial court erred in finding that they could not maintain an action against Soltes.

In August 1985, Roger S. Britton and appellants, Britton's ex-wife, Wilma, and his children Roger David, Michael S., and Daniel Lee, filed suit against Soltes alleging that during 1983 and 1984 Britton was under the care of Soltes and that Soltes failed to discover that Britton was suffering from tuberculosis. It was further alleged that during that period, Britton resided next door to appellants, that Britton visited appellants on a frequent basis, and that because of Soltes' failure to diagnose Britton's condition appellants also contracted tuberculosis.

Soltes filed a motion for a partial summary judgment against appellants. In his motion, Soltes pointed out that Roger S. and Wilma Britton both stated in their depositions that Soltes had never treated Wilma or the children. Soltes noted that under the supreme court's decisions in *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, and *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250, a medical malpractice action could not be maintained absent a direct physician-patient relationship or a special relationship between the patient and the plaintiff. Soltes argued that because there was no physician-patient relationship between himself and appellants and because the relationship between Britton and appellants was not special within the meaning of

*Renslow*, he was entitled to summary judgment as a matter of law.

The trial court granted Soltes' motion for a partial summary judgment. The court refused to find that Soltes' duty extended to appellants, stating that appellants' exposure was fortuitous and not the result of a special relationship. This appeal followed.

Prior to 1977, Illinois courts did not recognize any duty on the part of hospitals or doctors to nonpatient third parties injured as a result of a negligent act performed against a patient. In 1977, for the first time, a nonpatient third party was allowed to maintain an action against a hospital and doctor. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.) In *Renslow*, the supreme court held that a child could maintain an action against a hospital for negligence committed against her mother 8½ years before the child's birth.

When the mother of the plaintiff in *Renslow* was 13 years old, defendants negligently transfused her Rh-negative blood with Rh-positive blood. The transfusion with the incompatible blood caused the mother's blood to become sensitized. Defendants did not inform the mother that she had been transfused with incompatible blood, and she first learned that her blood had been sensitized eight years later, when she was pregnant with plaintiff. Because of the earlier sensitization of her mother's blood, plaintiff suffered permanent damage to her brain, various internal organs, and her nervous system.

In holding that plaintiff could maintain an action against defendants, the court noted that the risk of injury to an Rh-positive fetus of an Rh-negative woman who had been previously sensitized was long known and that, therefore, the risk of harm to the plaintiff was reasonably foreseeable. (67 Ill. 2d at 353-54.) On the issue of duty, the court noted that, historically, negligence could not be founded upon the breach of a duty owed to some person other than the plaintiff. However, the court also noted that the law allowed recovery in the case of injuries to unborn infants in a previable state whose existence was not apparent at the time of the negligent act. The court stated that it would be illogical to bar relief for an act done prior to conception where the defendant would be liable for the same act if unbeknownst to him a child had been conceived prior to his act. Stating that it believed that there was a right to be born free from prenatal injuries foreseeably caused by a breach of duty to one's mother, the court concluded that logic and sound policy required the extension of legal duty. 67 Ill. 2d at 357-58.

In the 13 years since *Renslow*, there has been no other case in which the supreme court has found a duty to nonpatient third parties. In *Kirk v. Michael Reese Hospital & Medical Center*, the court

refused to extend its holding in *Renslow*.

In *Kirk*, the plaintiff was injured while a passenger in a car driven by a former psychiatric patient at the defendant hospital. The plaintiff sued the hospital and two of its doctors alleging that they negligently failed to warn their patient that prescribed drugs would diminish his physical and mental abilities.

The court reiterated its holding in *Renslow*, stating:

"A wrong against one person may invade the protected rights of one who has a special relationship with the first party, as the law recognizes a limited area of transferred negligence. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 357; see also *Hofmann v. Blackmon* (Fla. App. 1970), 241 So. 2d 752.[1]) The transfer of duty is limited by a court's policy decision that the duty to act with reasonable care should be transferred to the third-party plaintiff. This duty, however, arises from a *special relationship* between either the defendant and the other party or the third-party plaintiff and the other party. The duty in *Renslow* was based primarily on the injury's being a direct result of alleged negligence to the infant's mother, which was found to have invaded the protected rights of the child, who was intimately related to the mother." *Kirk*, 117 Ill. 2d at 528.

In *Kirk*, the court found that defendants owed no duty to plaintiff. The court stated that because there was no patient-doctor relationship between defendants and plaintiff, or a special relationship as in *Renslow* between the patient and plaintiff, plaintiff's action against defendants was properly dismissed. 117 Ill. 2d at 532.

Appellants' brief does not address the relationship between Wilma Britton and Roger S. Britton. However, Roger David, Michael S. and Daniel Lee Britton argue that as the children of Roger S. Britton, their relationship to him is "special" within the meaning of *Renslow* and *Kirk*. We disagree.

■ Our reading of the *Renslow* and *Kirk* cases does not lead us to conclude that the supreme court intended to extend duty in all cases involving familial or parent-child relationships. We read *Renslow* and *Kirk* as providing that a duty will be extended only where the re-

---

[1] We are aware that the *Hofmann* case involves a fact situation somewhat similar to that in the present case. However, under Florida law, physicians have a duty to warn family members of a patient suffering from a contagious disease. Thus, the issue in *Hofmann* was whether the duty arose when the physician negligently failed to diagnose the contagious disease. No such duty to warn exists in Illinois, and we do not believe that the supreme court's citation to *Hofmann* indicates an intent to adopt a concept of duty as broad as that present under Florida law.

lationship between the patient and the third party is such that negligence to the patient necessarily results in injury to the third party.

In *Renslow* the court pointed out that a duty was found to exist in *Kirk* because the negligent acts invaded the protected rights of the child. The court found that this type of relationship did not exist between the patient and a passenger in his car. 117 Ill. 2d at 528.

We do not believe that the court's decision would have been different if the passenger in *Kirk* had been related to the patient. In that situation, it could not be argued that the injury to the passenger was the result of a special relationship with the plaintiff; nor could it be said that the passenger's protected rights were invaded by the action of the defendants toward their patient.

■ Similarly, in the present case, it cannot be said that Soltes' action toward Roger S. Britton invaded any of appellants' protected rights or that the relationship between Britton and appellants was such that Soltes' failure to diagnose Britton necessarily resulted in injury to appellants. This is especially true in light of evidence in the record that at the time Roger S. Britton fell ill he was divorced and living apart from his family. Under these circumstances, we believe that the trial court correctly found that the appellants' injury was caused by chance and not by any special relationship.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CERDA, P.J., concurs.

JUSTICE FREEMAN, dissenting:

To the extent that it denies the plaintiff children in this case an opportunity to seek recovery against defendant, I respectfully dissent from the majority's judgment. I agree with the majority that, as the issue presented in this case is one of first impression in Illinois, its determination turns on the interpretation of the two cases closest to it, *Renslow* and *Kirk*. However, simply put, I do not read those cases as narrowly as the majority.

In failing to find a duty in this case, I believe the majority focuses too narrowly upon the precise holding of *Renslow* and the reasoning of the court therein specifically addressed to that holding. In so doing, the majority ignores the language of *Renslow* concerning the broader philosophical underpinnings of the court's decision:

"We reaffirm the utility of the concept of duty as a means by

which to direct and control the course of the common law. But examples of changing notions of legal duty in the area of products liability, as well as the progressive expansion of duty in prenatal cases ***, demonstrate that duty is not a static concept.

This court has long recognized that a duty may exist to one foreseeably harmed though he be unknown and remote in time and place. [Citations.] Also, derivative actions, such as those of a husband or parent for the loss of the wife's or child's services, demonstrate that the law has long recognized that a wrong done to one person may invade the protected rights of one who is intimately related to the first. [Citation.] In these cases, because of the nature of the relationship between the parties harmed, the law recognizes a limited area of transferred negligence." *Renslow*, 67 Ill. 2d at 357.

The foregoing passage from *Renslow* reveals that it was, at bottom, the concept of transferred negligence which the *Renslow* court applied in finding a duty to the unborn child in that case. Thus, I believe that the issue in this case is not so much whether the precise holding in *Renslow* supports the assertion of a duty in defendant to the plaintiffs in this case but, rather, whether the concept of transferred negligence applied in *Renslow* supports that assertion. Unlike the majority, I would answer that query in the affirmative.

I further believe, unlike the majority, that *Kirk* also supports recognition of the duty asserted in this case. As it does with *Renslow*, the majority focuses too narrowly upon the precise holding in *Kirk* and extrapolates its own narrow holding in this case therefrom. Initially, I must take issue with the majority's attempt to distinguish *Hofmann v. Blackmon* from this case. As the majority notes, *Hofmann*, which involved a physician's duty to warn the minor child of his patient of the latter's affliction with a contagious disease, was cited by the *Kirk* court in reiterating the *Renslow* court's recognition of the concept of transferred negligence.

Notwithstanding that fact, the majority distinguishes *Hofmann* on the grounds that, under Florida law, physicians have a duty to warn family members of a patient suffering a contagious disease and that no such duty to warn exists in Illinois. In so distinguishing *Hofmann*, the majority simply begs the question presented here. We are called upon in this case to decide whether the duty recognized in Florida exists in this State. To simply say that the duty does not exist in this State is pointless. Moreover, contrary to the majority's implication, it does not appear from the opinion in *Hofmann* that the duty to warn

of contagious disease was recognized in Florida prior thereto or that it existed as a matter of Florida statutory law. Contrary to the majority's implication, *Hofmann* was the first Florida case recognizing the duty to warn of a contagious disease.

Finally, I cannot agree with the majority's interpretation of the *Kirk* court's citation to *Hofmann*. The *Kirk* court cited *Hofmann* as additional support for the principle that a wrong against one person may invade the protected rights of one who has a special relationship with the first party, as the law recognizes a limited area of transferred negligence. Contrary to the reasonable interpretation of the supreme court's citation to *Hofmann*, the majority reasons that it does not indicate an intent to adopt as broad a concept of duty as recognized under Florida law. To so hold, I believe, is to ignore the obvious.

I simply cannot subscribe to the majority's implication that the supreme court does not mean what it says. I believe that, by citing *Hofmann* as supporting the principle of transferred negligence applied in *Renslow*, the supreme court clearly, albeit tacitly, recognized that *Hofmann* involved a special relationship, upon which the theory of transferred negligence rests, as much as *Renslow* involved such a relationship.[2]

Were the majority to acknowledge, rather than ignore, the *Kirk* court's recognition in *Hofmann* of the same *type* of special relationship as involved in *Renslow*, albeit not exactly the same relationship involved therein, I do not believe it could logically find that the relationship of the children to the father in this case is not " 'special' within the meaning of *Renslow* and *Kirk*." 205 Ill. App. 3d at 946.

The majority concludes that *Renslow* and *Kirk* provide that a duty will be extended only where the relationship between the patient and third party is such that negligence to the patient necessarily results in injury to the patient. To buttress this conclusion, the majority reasons that the result in *Kirk* would not have been different had the plaintiff passenger therein been related to the patient driver because the injury to the former would not have resulted from that relationship, nor could it be said that the passenger's protected rights were invaded by the action of the *Kirk* defendants toward their patient. I agree with this reasoning. However, the fact that the *Kirk* plaintiff would not have been entitled to hold the defendants therein liable even if he had been related to their patient is irrelevant to this case.

---

[2]*Hofmann* was also construed as involving a special relationship between the patient and the minor child plaintiff in *McDowell v. County of Alameda* (1979), 88 Cal. App. 3d 321, 151 Cal. Rptr. 779.

In the majority's hypothetical situation in *Kirk*, the plaintiff's injuries would be a function not of his special relationship with the defendants' patient, but simply of his status as a passenger in a vehicle driven by the patient. In contrast, the injuries to the plaintiff children in this case were a function of nothing more than their special relationship to their father and the intimate relations inherent in that relationship, which were manifested by the close and frequent contacts between the father and children which are evident in the record before us. At bottom, I believe that the intimate relationship between the father and children in this case is deserving of as much protection as the intimate relationship recognized in *Renslow*. Contrary to the majority, I do not find the fact that the father in this case did not live with his children at the time he fell ill sufficient, whether alone or in combination with other factors, to conclude that the children's rights arising from the relationship with their father are not deserving of protection. *Cf. Hofmann v. Blackmon* (Fla. App. 1970), 241 So. 2d 752 (physician owes duty to minor child who is a member of the immediate family of and living with a patient suffering from a contagious disease to inform those charged with the minor's well being of the nature of the contagious disease and the precautionary steps to be taken to prevent the child from contracting such disease).

In addition to my disagreement with the majority's reasoning, I find the fact, ignored by the majority, that upholding a cause of action in the minor children, if not the ex-wife, in this case would align Illinois with most of the States that have considered the same or a similar issue as presented here worthy of consideration by this court. See *Hedlund v. Superior Court of Orange County* (1983), 34 Cal. 3d 695, 194 Cal. Rprtr. 805, 669 P.2d 41 (breach of physician's duty to warn or protect others from the danger posed by patient suffering from a communicable disease may result in liability to close family members and others who the physician knows or should anticipate will be in close proximity to the patient); *McIntosh v. Milano* (1979), 168 N.J. Super. 466, 484, 403 A.2d 500, 509 (physician has a duty to warn third persons against possible exposure to contagious or infectious diseases where he should have known thereof); *Wojcik v. Aluminum Co. of North America* (1959), 183 N.Y.S.2d 351 (wife had a cause of action against defendant employer for negligent failure to inform husband that physical examination conducted by physician working for employer disclosed that husband had or was developing tuberculosis); *Shepard v. Redford Community Hospital* (1986), 151 Mich. App. 242, 390 N.W.2d 239 (hospital had a physician-patient and thus special relationship with its patient and thus owed a duty of reasonable care to

her minor son who, as also a member of her household, was a foreseeable potential victim of negligent failure to diagnose spinal meningitis in the patient which was communicated to her son).

Moreover, the same or a similar right to seek recovery against a physician as asserted here is generally recognized in tort law:

> "One who by reason of his professional relations is placed in a position where it becomes his duty to exercise ordinary care to protect others from injury or danger is liable in damages to those injured by reason of his failure to do so.
>
> And it is the general rule that a physician is liable for his negligence in permitting persons to be exposed to infectious or communicable diseases to the injury of the persons so exposed." 61 Am. Jur. 2d Physicians & Surgeons §245, at 377 (1981).

See also 70 C.J.S. Physicians & Surgeons §88, at 496 (1987).

Finally, I feel compelled to respond to defendant's argument that allowing the ex-wife and children in this case to sue him would require allowing nonfamily members with close relationships to the father such as roommates, workmates and other health care providers such as his dentist to do so. Defendant warns that taking the duty asserted by plaintiffs to its logical conclusion would expose him and all physicians to endless litigation stemming from one alleged instance of malpractice.

Defendant's argument against the extension of the special relationship exception to the requirement of a physician-patient relationship to sue for medical malpractice merits consideration. Unfortunately for defendant, however, the supreme court has already rejected virtually the same argument. The *Renslow* court wrote:

> "The defendants assert that the need for an end to responsibility, short of perpetual liability for a single wrongful act, dictates that a duty for preconception torts not be imposed. They raise the specter of successive generations of plaintiffs complaining against a single defendant for harm caused by genetic damage done an ancestor in a nuclear accident. While we are aware that there may be similar potential for perpetual claims arising from chemical accident or long-term radiation exposure [citation], the case at bar is clearly distinguishable. The damage alleged is not, by its nature, self-perpetuating, nor is the plaintiff a remote descendant. We feel confident that when such a case is presented, the judiciary will effectively exercise its traditional role of drawing rational distinctions, consonant with current perceptions of justice, between harms which are com-

952

pensable and those which are not." *Renslow,* 67 Ill. 2d at 358.

In this case, defendant raises the specter of a potentially unlimited liability to all those infected by his patient as well as all those whom they infect. The possibility of such liability on the part of health care providers does give me pause. However, keeping in mind that the plaintiffs in this case are the children and the ex-wife of defendant's patient, to whom he lived in close proximity and whom he visited on a continuous basis, I, like the *Renslow* court, believe that trial courts can and will draw "rational distinctions, consonant with current perceptions of justice, between harms which are compensable and those which are not." 67 Ill. 2d at 358.

In this regard, defendant also asserts that limiting his duty and the right to sue to his patient's immediate family would constitute an artificial distinction between such plaintiffs and all others whom his patient or they might infect. I cannot agree that limiting the right to sue recognized in this case to a patient's immediate family members, *i.e.,* to those with whom he has special relationships, is an artificial and arbitrary distinction. However, even if it were, I remind defendant of what the *Renslow* court said in deciding that duty, rather than causation, should be the test of liability in preconception tort cases: "[P]olicy lines, to some extent arbitrary, must be drawn to narrow an area of actionable causation." (*Renslow,* 67 Ill. 2d at 356.) Unlike the majority, I would draw those policy lines, "defined traditionally as 'duty' " (*Renslow,* 67 Ill. 2d at 356), to include the plaintiff children in this case.