HERBERT WINGER *et al.*, Indiv. and as Co-adm'rs of the Estate of Nathan A. Winger, Deceased, Plaintiffs-Appellants, v. FRANCISCAN MEDICAL CENTER *et al.*, Defendants-Appellees.

Third District   No. 3—97—0680

Opinion filed September 24, 1998.—Rehearing denied November 18, 1998.

Appeal from the Circuit Court of Rock Island County; the Hon. Martin E. Conway, Judge, presiding.

Paul O'Malley (argued) and Beth A. Miller, both of Paul R. O'Malley, Ltd., of Chicago, for appellants.

Richard M. Batcher (argued) and Jeffrey C. Kull, both of Bozeman, Neighbour, Patton & Noe, of Moline, for appellee Franciscan Medical Center.

Paul C. Estes, of Hinshaw & Culbertson, of Peoria, and Bruce L. Carmen (argued) and Robert M. Bennett, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Danilo V. Domingo.

JUSTICE BRESLIN delivered the opinion of the court:

May a psychiatrist and hospital be held liable under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 1996)) for the death of a patient when the patient committed suicide while in their care and custody but was not bereft of reason or insane at the time he took his own life? We believe the answer is yes, so long as the act of suicide is reasonably foreseeable and the defendants have breached the applicable standard of care.

# I. FACTS

Plaintiffs Herbert Winger and Joyce Winger filed a wrongful death action against the defendants, Franciscan Medical Center (hospital) and Dr. Danilo Domingo, a psychiatrist, after their son Nathan committed suicide while in the defendants' care for severe depression. Nathan was admitted to the hospital's psychiatric ward on January 27, 1990, under the care of Dr. Domingo. He voluntarily admitted himself after taking extra Elavil, which had been prescribed by Dr. Domingo to treat his depression.

Nathan had a history of suicide attempts. Prior to his death he had been admitted to the defendants' facility five times for suicide attempts in the five previous months. At the time he entered the hospital on the 27th, Nathan informed a nurse that he took extra Elavil to help with his depression and that he was going to let himself "sink so low again that [he would] get suicidal." The nurse's notes stated "Plan, monitor patient, prevent from self-harm." Nathan was placed on "close supervision," which allowed a psychiatric patient unmonitored access to bathroom facilities, as well as belts, shoelaces, telephone cords and other objects that might assist an individual to inflict self-harm. Patients on "suicide precautions," however, did not have access to such objects. The hospital's policy defined potentially suicidal patients as patients who discuss death and the uselessness of life. If the admission was due to a suicide attempt, that fact was to be reported to the patient's physician immediately.

After Nathan's admission, Dr. Domingo recommended an aggressive treatment of electroconvulsive therapy (ECT) for him. Later, Nathan expressed doubt to a nurse regarding ECT therapy and stated that he "felt like a loser" and a "fool." He said he was scared of death and that he was scared that he would feel as he did the rest of his life, but that he could not live that way. He felt "bad all the time." At 10 p.m. on January 29 a nurse quoted Nathan as saying "It's hopeless. I feel hopeless. I keep trying, but I can't do anything with my life. I worry about the ECT. I worry about whether it will help or not. I wish I was manic depressive instead of this. My life is hopeless." Close supervision was maintained. Shortly after midnight, Nathan stuffed clothing under his bed sheets to make it appear as if he were in bed. He entered his bathroom and locked the door behind him. He then committed suicide by hanging himself with his shoelaces from a showerhead.

# II. PROCEDURAL HISTORY

Plaintiffs filed a wrongful death action on June 3, 1991, alleging that the hospital was negligent because it failed to provide a nonlock-

ing door and a breakaway showerhead. The complaint also alleged that Dr. Domingo was negligent for failing to order "one-to-one" supervision, failing to properly treat Nathan, and failing to properly use psychiatric therapy. Plaintiffs voluntarily dismissed the action on April 27, 1994. They refiled on December 6, 1994, alleging that the hospital's staff failed to place Nathan under proper supervision, failed to prohibit him from having access to the bathroom, and failed to restrict his access to shoelaces. The new complaint alleged that Dr. Domingo was negligent because he failed to place Nathan under closer supervision and allowed him access to bathrooms, belts, shoelaces and other instruments that were potentially harmful. Plaintiffs filed an amended complaint on July 23, 1996, which included the previous allegations that the hospital was negligent for failing to provide breakaway showerheads.

The hospital and Dr. Domingo subsequently moved for summary judgment. Both relied on the statements of plaintiffs' expert, Dr. Richard Goldberg. In his deposition, Dr. Goldberg opined that Nathan understood and appreciated his acts and that he intended to kill himself. The defendants consequently argued that since Nathan's actions were intentional and not comparable to the defendants' negligence, and he was not bereft of reason at the time he committed suicide, no recovery was possible. The hospital also moved to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1996)), claiming that the complaint was barred by the statute of limitations.

The trial court granted the motions for summary judgment. Relying on *Stasiof v. Chicago Hoist & Body Co.*, 50 Ill. App. 2d 115, 200 N.E.2d 88 (1964), *aff'd sub nom Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156, 203 N.E.2d 902 (1965), and *Moss v. Meyer*, 117 Ill. App. 3d 862, 454 N.E.2d 48 (1983), the court concluded that it was essential that the plaintiffs plead and prove that Nathan was insane or bereft of reason at the time he committed suicide and that his insanity resulted from a negligent act or omission by the defendants. Since the plaintiffs could not prove that Nathan was insane or bereft of reason at the time he killed himself, the court awarded summary judgment to the defendants. The court did not address the hospital's statute of limitations argument.

Plaintiffs' counsel subsequently deposed defense expert Dr. Morton Silverman, who testified regarding the foreseeability of Nathan's suicide. Dr. Silverman agreed that the mental health care professional should take precautions to prevent a patient from committing acts that are self-destructive, even if the patient is not insane or bereft of reason. With the new deposition in hand, the plaintiffs moved for

reconsideration. Although the court considered the new evidence, it denied the motion and this appeal followed.

## III. STANDARD OF REVIEW

■ A motion for summary judgment may only be granted when the right of the moving party is clear and free from doubt. *Pedersen v. Joliet Park District*, 136 Ill. App. 3d 172, 483 N.E.2d 21 (1985). It is properly granted when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996); *Machinery Transports v. Morton Community Bank*, 293 Ill. App. 3d 207, 687 N.E.2d 533 (1997). An appellate court performs its review *de novo* (*Container Corp. v. Wagner*, 293 Ill. App. 3d 1089, 689 N.E.2d 259 (1997)), and in doing so it must construe the evidence most strictly against the movant and liberally in favor of the opponent (*Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867 (1986)).

## IV. STATUTE OF LIMITATIONS

We will first address the hospital's argument that the plaintiffs' claims are barred by the statute of limitations. The hospital claims that the refiled action is barred because it was not preserved by the savings provision in section 13—217 of the Code (735 ILCS 5/13—217 (West 1994)). It asserts that the second suit contains entirely different allegations of medical negligence which cannot be filed more than two years after the claimant knew or should have known of the negligence, and in no event more than four years after the alleged negligence. 735 ILCS 5/13—212(a) (West 1996). It argues that all of the new claims in the second action are clearly barred since they were filed more than four years after the event.

■ A wrongful death action must be filed within two years after the death of the plaintiffs' decedent. 740 ILCS 180/2 (West 1996). The action may be dismissed after the limitations period and be refiled pursuant to the one-year savings provision in section 13—217. *Kristan v. Belmont Community Hospital*, 51 Ill. App. 3d 523, 366 N.E.2d 1068 (1977). Section 13—217, however, only permits refilings when the court can determine, by an inspection of the record in the two suits, that the first was for the identical claim and cause of action averred in the second. *Hamilton v. Chrysler Corp.*, 281 Ill. App. 3d 284, 288-89, 666 N.E.2d 758, 761 (1996), citing *Gibbs v. Crane Elevator Co.*, 180 Ill. 191, 196, 54 N.E. 200, 202 (1899).

Seizing upon the language of identical claim and cause of action, the hospital maintains that the second complaint involves a different claim which could not be saved under section 13—217. We disagree.

In *Gonzalez v. Thorek Hospital & Medical Center*, 143 Ill. 2d 28, 570 N.E.2d 309 (1991), the court reversed the dismissal of the plaintiff's malpractice action. The plaintiff's initial complaint was dismissed for want of prosecution. Pursuant to section 13—217, plaintiff filed a new complaint within one year. The defendants moved to dismiss the second complaint on the basis that the first complaint was insufficient to state a cause of action. According to several of the defendants, the action could not be maintained because the first action did not provide a basis to toll the statute of limitations and the second complaint was a nullity and consequently barred by the statute of limitations. The court disagreed, holding that although the first complaint did not state a cause of action, it was sufficient to constitute a complaint, and therefore the statute of limitations could be tolled through the operation of section 13—217. *Gonzalez*, 143 Ill. 2d at 35-36, 570 N.E.2d at 312.

The court then sought to determine whether the plaintiff could avail herself of section 13—217 by analyzing whether the defendants had sufficient notice of the litigation arising from the same set of facts and circumstances. *Gonzalez*, 143 Ill. 2d at 36-37, 570 N.E.2d at 313, citing *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 492 N.E.2d 1322 (1986). It reviewed the plaintiff's two complaints and noted that the original complaint indicated that an injury occurred in the defendants' hospital on a particular date and that the injury was the result of the defendants' conduct. The court turned to the second complaint and found that it realleged those facts and also charged the defendants with specific acts of negligence. Like the first complaint, the second complaint also asked for a judgment in excess of $15,000. Based on the foregoing, the court concluded that the two complaints were for the same causes of action and thus the plaintiff could refile under section 13—217. *Gonzalez*, 143 Ill. 2d at 38, 570 N.E.2d at 313.

■ Similarly, in the instant case, although the plaintiffs did not refile precisely identical allegations in their second complaint, we believe the refiled claims are sufficiently identical to satisfy the requirements of section 13—217. Just like the first complaint, the second complaint is a wrongful death action related to the hospital's failure to anticipate Nathan's conduct and act reasonably to prevent the injury suffered at its facility. The second arises out of the same facts and circumstances and is a wrongful death action against the hospital for its failure to properly provide for its patient. We thus hold that the action was properly refiled.

## V. DUTY OF CARE: KNOWLEDGE OF SUICIDAL TENDENCIES

Turning to the merits of the action, and the bases upon which

summary judgment was awarded, the defendants argue that this court should affirm because the plaintiffs are improperly attempting to compare the decedent's intentional conduct to their alleged negligence. They insist that Nathan's intentional conduct was an intervening act and that Nathan is solely responsible for his injuries. Relying on *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 641 N.E.2d 402 (1994), and *Poole v. City of Rolling Meadows*, 167 Ill. 2d 41, 656 N.E.2d 768 (1995), the defendants conclude that Nathan's own intentional conduct absolves the caregivers of liability.

In *Ziarko*, an employee brought suit against his employer and a railroad for injuries he suffered in an accident involving a train after he stepped from his truck. He sued the railroad for negligence and wilful and wanton conduct and his employer for negligence. The railroad brought a contribution claim against the employer. The employer argued that the railroad was barred from asserting such a claim because it could not seek to compare its wilful and wanton conduct to that of the employer since its conduct was only negligent. The court held that the railroad could seek contribution so long as its conduct was not intentional. *Ziarko*, 161 Ill. 2d at 280-81, 641 N.E.2d at 408-09; see also *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 593 N.E.2d 522 (1992). The court subsequently reaffirmed its position in *Poole*, where it held that a plaintiff's contributory negligence can be compared to a defendant's wilful and wanton misconduct if the conduct was reckless and not intentional. *Poole*, 167 Ill. 2d at 47-49, 656 N.E.2d at 771.

■ The defendants point out that this position is consistent with the Restatement (Second) of Torts, section 482(2) and section 503, which in relevant part state:

> "A plaintiff whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the plaintiff's safety is a legal cause of the plaintiff's harm." Restatement (Second) of Torts §§ 482(2), 503(3) (1965).

> "[W]here the plaintiff's conduct is itself in reckless disregard of his own safety, it bars his recovery not only from a defendant who has merely been negligent, but also from one who has acted in reckless disregard of the plaintiff's safety. The greater fault in the one case is balanced against the greater fault in the other." Restatement (Second) of Torts § 503, Comment c (1965).

Defendants assert that these principles provide a solid basis for concluding that the law does not recognize any comparison of one's own intentional conduct with the alleged tortfeasor's actions. They assert that the only exception is when the decedent or injured party was bereft of reason at the time he injured himself and his mental condition was the result of the tortfeasor's conduct.

There is support for this proposition in our state. In *Stasiof v. Chicago Hoist & Body Co.*, 50 Ill. App. 2d 115, 200 N.E.2d 88 (1964), aff'd sub nom. *Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156, 203 N.E.2d 902 (1965), the plaintiff attempted suicide five years after an automobile accident. In the interim he had lived a reasonably normal life. The court held that suicide or attempted suicide is not a natural or probable result of a defendant's negligence. It described the act of suicide as an independent intervening event that a tortfeasor could not foresee. *Stasiof*, 50 Ill. App. 2d at 122, 200 N.E.2d at 92. The court recognized, however, that an exception exists when, as a proximate result of an injury caused by the tortfeasor, the injured party becomes insane or bereft of reason and while in that state commits suicide. *Stasiof*, 50 Ill. App. 2d at 122, 200 N.E.2d at 91; see also *Repinski v. Jubilee Oil Co.*, 85 Ill. App. 3d 15, 405 N.E.2d 1383 (1980) (plaintiff could submit evidence of suicide attempt where the evidence suggested that the attempt took place shortly after the accident and there was evidence that the plaintiff was bereft of his free will when he acted). Because the plaintiff was not rendered bereft of reason by the accident, he could not introduce evidence of injuries from the attempted suicide. *Stasiof*, 50 Ill. App. 2d at 123-24, 200 N.E.2d at 92-93. The supreme court affirmed the decision, noting that the universal rule is that the act of suicide is an independent intervening act that is not foreseeable and breaks the chain of causation. *Little*, 32 Ill. 2d at 158-59, 203 N.E.2d at 903; see also *Grand Lodge Independent Order of Mutual Aid v. Wieting*, 168 Ill. 408, 48 N.E. 59 (1897).

More recently, the court in *Moss v. Meyer*, 117 Ill. App. 3d 862, 454 N.E.2d 48 (1983), relied upon *Stasiof* when it held that the plaintiff could not recover for injuries resulting from an attempted suicide. The defendant was a pharmacy charged with negligence by the plaintiffs because it had left a prescription at the doorstep of their home. The prescription refill had been requested by the plaintiffs' minor child. When she received it she followed through with a suicide plan by ingesting a large number of capsules. Negligence on the part of the pharmacy was claimed, and the plaintiffs asserted that it was the proximate cause of their daughter's injuries. The court disagreed, holding that because their daughter's conduct was not foreseeable, and the evidence was clear that she understood her actions and was not bereft of reason at the time of her act, the defendant's conduct could not have been the proximate cause of the injury. *Moss*, 117 Ill. App. 3d at 865-66, 454 N.E.2d at 51.

We do not disagree that these cases remain viable today. However, all the cases cited are distinguishable from the present action. This is an action asserting psychiatric malpractice and the failure to properly

supervise; it is different from general medical malpractice actions because the negligence is not in the diagnosis or treatment but, rather, it is in the failure to carefully protect a patient from inflicting self-harm. *Kent v. Whitaker*, 58 Wash. 2d 569, 364 P.2d 556 (1961). "There is a substantial difference between holding one liable to foresee the suicide of a person sane when injured who later commits suicide, and holding a hospital liable where it admits a psychiatric patient with known suicidal tendencies." *Pietrucha v. Grant Hospital*, 447 F.2d 1029, 1034 (7th Cir. 1971). This was recognized in *Peoples Bank v. Damera*, 220 Ill. App. 3d 1031, 581 N.E.2d 426 (1991), where the court addressed the issue of the propriety of jury instructions in an action against a psychiatrist for malpractice resulting in a patient's suicide. The court stated that the action was different because "while the doctor is working to assist the patient to suppress suicidal tendencies, the patient, by the nature of his illness, may be working at cross-purposes to his doctor's suggestions." *Damera*, 220 Ill. App. 3d at 1035, 581 N.E.2d at 429. Accordingly, the court held that in a suicide action against the decedent's psychiatrist, the comparative fault of the decedent will not likely ever be a relevant issue. *Damera*, 220 Ill. App. 3d at 1035-36, 581 N.E.2d at 429; see also *Hobart v. Shin*, 292 Ill. App. 3d 580, 686 N.E.2d 617 (1997) (relying on *Damera* and holding that an affirmative defense of contributory negligence could not be asserted by a physician against the estate of a mentally ill patient who had committed suicide).

This is a reasonable approach given that in *Damera*, as in the instant case, the decedent sought the services of the psychiatrist to treat and cure his condition. The crucial problem in the previous cases we have cited and ones like them is that the act of suicide was not reasonably foreseeable and thus liability reasonably could not be placed on the tortfeasor. That is not the case here. Here there is a genuine issue of fact regarding the foreseeability of the suicide. Therefore, we do not find *Stasiof*, *Little* or *Moss* controlling.

We agree with *Damera* that the circumstances are special in nature. However, the defendants would argue that, nonetheless, no liability may attach in this case because this is not a case comparing the defendants' negligence to the decedent's contributory negligence, but rather this is a case comparing negligence to intentional conduct.

■ It is well settled that a hospital and its staff must exercise reasonable care to protect suicidal patients from self-harm. *Dinnerstein v. United States*, 486 F.2d 34 (2d Cir. 1973); *Bornmann v. Great Southwest General Hospital, Inc.*, 453 F.2d 616 (5th Cir. 1971); *Pietrucha*, 447 F.2d at 1033; *Abille v. United States*, 482 F. Supp. 703 (N.D. Cal. 1980); *Meier v. Ross General Hospital*, 69 Cal. 2d 420, 445 P.2d 519, 71 Cal.

Rptr. 903 (1968); *Gregory v. Robinson*, 338 S.W.2d 88 (Mo. 1960). This is the case no matter whether the patient is voluntarily or involuntarily admitted. *Abille*, 482 F. Supp. at 706. But still for years courts have arrived at varying results when struggling with the issue of the caregiver's liability in various circumstances involving suicides.

For example, in *Tomfohr v. Mayo Foundation*, 450 N.W.2d 121 (Minn. 1990), the court concluded that because the hospital voluntarily undertook the duty to protect the patient from self-inflicted injury, it had assumed a duty to exercise reasonable care to prevent the event. The patient could not be responsible for breaching a duty to exercise reasonable care because the hospital had already assumed that responsibility. *Tomfohr*, 450 N.W.2d at 125. The court analogized the circumstance to a situation where a custodian of another individual can be liable for harm inflicted by a third party when the harm was foreseeable. *Tomfohr*, 450 N.W.2d at 125, citing Restatement (Second) of Torts § 320 (1965).

In *Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68, 393 S.E.2d 914 (1990), the plaintiffs charged the defendant hospital with negligence for allowing the decedent off the hospital grounds when it was foreseeable that the decedent would attempt suicide. While he was off the grounds on a hospital bus, the decedent was able to persuade the driver to permit him to exit the vehicle. The decedent then took his life by jumping off a nearby overpass. The court recognized that a cause of action existed for failing to take reasonable steps to prevent a suicidal patient from committing suicide. *Bramlette*, 302 S.C. at 74, 393 S.E.2d at 917. So long as the patient's conduct was foreseeable, the caregiver's negligence could be found to be the cause of the death—the death being the natural and probable result of the defendant's conduct. See *Bramlette*, 302 S.C. at 73-74, 393 S.E.2d at 917.

Similarly in *Psychiatric Institute v. Allen*, 509 A.2d 619 (D.C. App. 1986), the court upheld a verdict against an institute because the plaintiffs had established the necessary elements of a wrongful death action. Their minor child had been admitted to the hospital for psychiatric care and had made numerous comments demonstrating certain suicidal tendencies. The court held that the parents could prevail. They had established the necessary elements of the cause of action, which included the crucial elements proving that the suicide was foreseeable and that the hospital's breach of the standard of care was a direct and substantial cause of the death. See *Allen*, 509 A.2d at 624-25.

In *Weathers v. Pilkinton*, 754 S.W.2d 75 (Tenn. 1988), the court reached a different conclusion. Plaintiffs filed a wrongful death action

against the decedent's physician for failing to take reasonable precautions to prevent the decedent from committing suicide. The decedent shot himself at home two weeks after he had been hospitalized for psychiatric care. The plaintiff's experts stated that decedent's doctor failed to fulfill the applicable standard of care because, among other things, he should have committed the decedent involuntarily and the failure to do so was the proximate cause of the death. *Weathers*, 754 S.W.2d at 76-77. The majority disagreed. It noted that suicide is generally an independent intervening event. The court acknowledged, however, that cases involving treatment of the mentally ill are different in that in such cases it may be more foreseeable that precautions may be necessary to prevent the patient from taking his life. *Weathers*, 754 S.W.2d at 78, citing Annot., *Liability of Doctor, Psychiatrist or Psychologist for Failure to Take Steps to Prevent Patient's Suicide*, 17 A.L.R.4th 1128 (1982). Yet, it refused to allow the action because it found that the intentional and volitional suicide by the patient, although mentally affected, would not have supported a cause of action had he survived. Consequently, the facts did not support a wrongful death action. *Weathers*, 754 S.W.2d at 78.

■ We disagree with *Weathers*. Despite the fact that a patient is not bereft of reason and may appreciate the consequences of his actions, we recognize the fact that there are varying degrees of mental affectation. Although a patient may be in full understanding of his actions, an illness may still exist for which treatment has been requested and admission sought. The patient can still, as in this case, work against his physician and cut the Gordian knot before the physician can work to unravel it. See *Damera*, 220 Ill. App. 3d at 1035-36, 581 N.E.2d at 429. Under these circumstances, to absolve the caregiver of liability would be imprudent and would divest the profession of any standard of care. Rather than absolve the physician of liability when self-destructive conduct is reasonably foreseeable, the better approach is to require reasonable precautions in light of the special relationship between the physician and his patient. We find that the proper standard is most ably stated in *Cowan v. Doering*, 215 N.J. Super. 484, 494-95, 522 A.2d 444, 449-50 (1987), *aff'd*, 111 N.J. 451, 545 A.2d 159 (1988):

> "Where it is reasonably foreseeable that a patient by reason of his mental or emotional illness may attempt to injure himself, those in charge of his care owe a duty to safeguard him from his self-damaging potential. This duty contemplates the reasonably foreseeable occurrence of self-inflicted injury regardless of whether it is the product of the patient's volitional or negligent act."

■ As health care professionals, the defendants assumed a duty to

exercise the degree of care toward their patients that would be followed by members of their profession under similar circumstances. *Britton v. Soltes*, 205 Ill. App. 3d 943, 563 N.E.2d 910 (1990); *Kwak v. St. Anthony De Padua Hospital*, 54 Ill. App. 3d 719, 369 N.E.2d 1346 (1977). The defendants' expert agreed that, as mental health care professionals, psychiatric caregivers should take precautions to prevent a patient from inflicting self-harm, even if the patient is not insane but merely mentally affected. Our analysis supports this conclusion.

We believe the principles of fault stated in *Damera* may be applied in cases of intentional conduct when it can be demonstrated, as in this case, that the conduct arose from the plaintiff's mental state (*e.g.*, severe depression), the act of suicide was foreseeable, and the plaintiff was in the custody or control of the physician or hospital at the time he acted. This rule arises from the special duty owed by the psychiatric caregivers to the patient. See C. Williams, *Fault & the Suicide Victim: When Third Parties Assume a Suicide Victim's Duty of Self-Care*, 76 Neb. L. Rev. 301 (1997) (arguing that when the caregiver assumes custody or control of a psychiatric patient and has knowledge of his suicidal tendencies, the defendant should be held to assume the victim's duty of self-care). We accordingly hold that when the mental healthcare professional has assumed the custody or control of an individual, be it for a voluntary or involuntary admission, so that it is treating the individual and has knowledge of his suicidal tendencies, the defendant assumes the patient's duty of self-care and must act reasonably to prevent self-inflicted harm. Liability will not be absolved for the simple reason that the patient was not bereft of reason and could appreciate the severe consequences of his actions.

## VI. CONCLUSION

We note that the defendants are not guarantors of safety. This is not a matter of strict liability. The burden on the hospital and physician is to take reasonable steps to avoid a foreseeable tragedy in their facility. The degree of care and its character will necessarily vary with the circumstances of each case. In this case whether the suicide was foreseeable and whether the conduct of the defendants was reasonable under the circumstances are questions of fact to be determined by a jury. Therefore, we hold that summary judgment was inappropriately granted.

For the foregoing reasons, the judgment of the circuit court of

Rock Island County is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SLATER, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. Summary judgment is required where the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS Ann. 5/2—1005(c) (Michie 1996); *Machinery Transports v. Morton Community Bank*, 293 Ill. App. 3d 207 (1997). Here, there is no genuine issue of material fact, so the issue before this court is whether the trial court erred in determining that the defendants were entitled to judgment as a matter of law.

The state of the law in Illinois on this issue is clear: where a defendant is alleged to be liable in tort for the suicide or attempted suicide of a plaintiff or a plaintiff's decedent, the act of suicide is an independent intervening act which breaks the chain of causation and shields the alleged tortfeasor from liability, unless the injured party is insane or bereft of reason and attempts suicide while in that state. *Stasiof v. Chicago Hoist & Body Co.*, 50 Ill. App. 2d 115 (1964), *aff'd sub nom. Little v. Chicago Hoist & Body Co.*, 32 Ill. 2d 156 (1965); see also *Moss v. Meyer*, 117 Ill. App. 3d 862, 865-66 (1983).

Here, there is no dispute that Nathan was not insane nor bereft of reason. Plaintiff's own expert testified in his deposition that Nathan understood and appreciated his acts and that he intended to kill himself. Given these undisputed facts, and the state of the law under *Stasiof*, *Little*, and *Moss*, the trial court properly granted the defendants' motion for summary judgment.

While the majority notes that some of our sister jurisdictions have chosen to adopt a rule of law that creates liability for health care providers based upon a concept of a heightened duty to protect potentially suicidal patients from self-harm, *no* such duty has, to date, been created in Illinois. In light of our own supreme court's holding in *Little*, it would have been error for the trial court to have relied upon precedent from other jurisdictions to deny the summary judgment motion. I believe that it is error for our court to do so.

For the foregoing reasons, I would affirm the trial court's granting of the defendants' motion for summary judgment and I dissent on that basis.