2023 IL App (1st) 221736

FIFTH DIVISION
December 22, 2023

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-22-1736

| | | |
|---|---|---|
| PATRICIA O'DONNELL, Independent | ) | |
| Administrator of the Estate of Alex Melnyk, Deceased, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2019 L 7393 |
| | ) | |
| BAILEY & ASSOCIATES COUNSELING, | ) | Honorable |
| AND PSYCHOTHERAPY LLC; NICOLE M. BAILEY; | ) | Daniel A. Trevino, |
| FOUNDATIONS RECOVERY NETWORK, LLC; | ) | Judge Presiding. |
| ZACHARY KORDIK, M.D.; BIANA MAVASHEVA; | ) | |
| and BURKE HALINOVYCH, n/k/a Burke Baldwin, | ) | |
| | ) | |
| Defendants-Appellees. | | |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1 In late 2014, Alexander Melnyk began to receive outpatient mental health treatment. In July 2017, he died by suicide. The administrator of his estate brought an action alleging both wrongful death and injury to the person under section 27-6 of the Probate Act of 1975 (Survival Act) (755 ILCS 5/27-6 (West 2016)) against Mr. Melnyk's outpatient mental healthcare providers—Nicole M. Bailey, Dr. Zachary Kordik, Biana Mavasheva, Burke Baldwin, and vicariously, Bailey & Associates Counseling and Psychotherapy LLC and Foundations Recovery

Network LLC (collectively, defendants).

¶ 2    The administrator alleged that defendants breached a duty to provide Mr. Melnyk with reasonable care, including taking reasonable precautions to protect him from self-harm. The administrator further alleged that the breach of that duty proximately caused Mr. Melnyk's death. The circuit court granted summary judgment to defendants on the basis that suicide is an intervening and independent act by the decedent that precludes liability as a matter of law.

¶ 3    For the reasons that follow, we hold that a mental healthcare provider can be held liable when treating an outpatient client for a suicide that is proximately caused by the provider's failure to act within the standard of care. Accordingly, we reverse the court's order granting summary judgment to defendants and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5    The following facts, based on the pleadings and the attachments to the motion for summary judgment and response, provided the basis upon which the circuit court granted summary judgment.

¶ 6    In December 2014, defendant Nicole Bailey, a licensed clinical professional counselor, began providing psychotherapy to Alexander Melnyk. In intake paperwork, Ms. Bailey recorded that Mr. Melnyk experienced "depression" and "excessive alcohol consumption." Progress notes demonstrate the two met regularly for therapy sessions.

¶ 7    In January 2017, Ms. Bailey recorded that Mr. Melnyk attempted suicide. In addition to continuing to provide him with therapy, she also referred Mr. Melnyk to an intensive outpatient program with defendants Foundations Recovery Network, LLC, and its subsidiary, Foundations Chicago, LLC (collectively, Foundations).

¶ 8    At Foundations, defendants Biana Mavasheva, a licensed professional counselor, and

Burke Halinovych, a licensed clinical social worker (now known as Burke Baldwin), provided Mr. Melnyk with counseling and psychotherapy. Defendant Dr. Zachary Kordik, a psychiatrist, served as the medical director at Foundations, performed a psychiatric evaluation of Mr. Melnyk, and prescribed Mr. Melnyk medications. A document, titled "Face Sheet," indicates that Mr. Melnyk was diagnosed with major depressive disorder, alcohol use disorder, and unspecified cannabis related disorder.

¶ 9 During intensive outpatient therapy sessions, Mr. Baldwin recommended that Mr. Melnyk use the "Wim Hof method." The Wim Hof method is a breathing exercise that combines shorter and longer breaths with periods of holding one's breath while exposed to cold water.

¶ 10 On July 10, 2017, Mr. Melnyk's mother found Mr. Melnyk dead in his apartment with a belt looped around his neck and the other end attached to a doorknob. The Office of the Medical Examiner in Cook County ruled Mr. Melnyk's death a suicide.

¶ 11 Patricia O'Donnell, administrator of Mr. Melnyk's estate, filed the underlying complaint on behalf of his parents and two brothers. Ms. O'Donnell asserted a claim for wrongful death against each defendant based on the theory that the individual defendants breached their duty of care to Mr. Melnyk. She asserted a separate claim under the Survival Act against each defendant for Mr. Melnyk's suffering. 755 ILCS 5/27-6 (West 2016).

¶ 12 Ms. O'Donnell alleged that defendants breached their duty by failing, despite Mr. Melnyk's symptoms, to properly assess him, appropriately treat his mental illness, or refer Mr. Melnyk for emergent or additional psychiatric services. She additionally alleged that Dr. Kordick failed to properly supervise Mr. Baldwin, allowing Mr. Baldwin to recommend the Wim Hof method, which Ms. O'Donnell alleged was an inappropriate intervention. Ms. O'Donnell alleged that Foundations and Bailey & Associates Counseling and Psychotherapy LLC were vicariously liable.

¶ 13 Foundations and Ms. Mavasheva filed a motion for summary judgment. The remaining defendants adopted the motion in full. Defendants asserted that, under Illinois law, suicide is an independent intervening act that breaks any alleged chain of causation. According to defendants, Illinois law recognizes only two exceptions to this "black letter rule." These exceptions are (1) where the defendant assumes custody and control of the decedent and (2) where the defendant causes the decedent to become insane or bereft of reason. Because neither exception applied, defendants argued "as a matter of law" that they could not be found to have breached any duty to prevent the suicide, and plaintiff could not prove causation.

¶ 14 Plaintiff filed a response in opposition to defendants' motions. She argued that Illinois courts have made it clear that mental healthcare professionals owe a duty to their patients to take reasonable steps to protect them from reasonably foreseeable self-harm and that this duty exists even when the patient is being treated on an outpatient basis. Plaintiff attached affidavits from Dr. Cheryl D. Wills and Dr. Richard J. Stride. These two doctors expressed the opinion that "it should have been reasonably foreseeable to *** any mental health professional that Alex Melnyk would commit suicide or act in a self-destructive manner."

¶ 15 The circuit court granted defendants' motion for summary judgment. The circuit court's oral ruling was not transcribed but it issued a brief written order in which it wrote that "in addition to the reasons stated in open court, the Court specifically relied on the following cases and citations." The court then cited three cases, which the court summarized as follows:

> "*Stanphill v. Ortberg*, 2018 IL 122974, ¶ 35, stating the general rule that 'the injured party's voluntary act of suicide is an independent intervening act, which is unforeseeable as a matter of law and breaks the causal link between any alleged negligent conduct and the injury.'

*Winger v. Franciscan Medical Center*, 299 Ill. App. 3d 364, 375 (1998), \*\*\* which states that 'when the mental healthcare professional has assumed the custody or control of an individual, be it for a voluntary or involuntary admission, so that it is treating the individual and has knowledge of his suicidal tendencies, the defendant assumes the patient's duty of self-care and must act reasonably to prevent self-inflicted harm'; and,

[*Doe I v. Doe I*], 2016 IL App (1st) 153272, ¶ 16, noting the general rule as stated by the First District Appellate Court that 'the voluntary act of suicide "is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent conduct," ' and noting there are only two recognized exceptions to the general rule, when (1) 'as the proximate cause of a physical injury caused by the tortfeasor, the injured party becomes insane or bereft of reason and while in that state commits suicide,' and (2) 'when a mental health professional who has assumed the care, custody or control over an individual with suicidal tendencies fails to act reasonable to prevent self-inflicted harm \*\*\*'(citing [*Winger*, 299 Ill. App. 3d at 375])."

¶ 16    As the circuit court made clear in denying plaintiff's motion to reconsider, which it did with a court reporter present, the court viewed the exception to the suicide rule noted in *Winger* and repeated in *Doe* as inapplicable in this case because Mr. Melnyk "was not in the [defendants'] custody or control. He was not in the defendant[s'] facility."

¶ 17                              II. JURISDICTION

¶ 18    The circuit court denied plaintiff's timely motion to reconsider on October 26, 2022. Plaintiff filed a notice of appeal on November 18, 2022. This court has jurisdiction over the appeal

pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 19                                    III. ANALYSIS

¶ 20              A. Suicide Is Not Unforeseeable As a Matter of Law for an Outpatient

¶ 21    The primary issue on appeal is whether the circuit court properly granted summary judgment on the basis that suicide is an independent intervening cause that is unforeseeable as a matter of law, such that, except in two limited exceptions that are not applicable here, mental health professionals can never be liable for a failure to prevent suicide. More specifically, this case requires us to determine whether the exception that this court has held applies in an inpatient setting can also apply where, as in this case, the decedent dies by suicide while receiving care in an outpatient setting.

¶ 22    A motion for summary judgment may only be granted when the right of the moving party is clear and free from doubt. *Pedersen v. Joliet Park District*, 136 Ill. App. 3d 172, 175 (1985). Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). We review the circuit court's summary judgment decision *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

¶ 23    Defendants' argument, and the circuit court's ruling, rest on the application of what our supreme court has described as the "general rule." *Turcios v. The DeBruler Co.*, 2015 IL 117962, ¶ 20. Under this general rule, "the injured party's voluntary act of suicide is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent [or intentional] conduct." *Id.* As the supreme court explained in *Turcios*, the "general rule" is based on policy considerations inherent in analyzing

legal cause. Any legal cause analysis is limited by an "assessment of foreseeability." *Id.* ¶ 24. "Courts ask whether the injury is the type of injury that a reasonable person would see as a 'likely result' of his or her conduct, or whether the injury is so 'highly extraordinary' that imposing liability is not justified." *Id.* (quoting *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 456 (1992)).

¶ 24    The *Turcios* court stated that the general rule was not absolute. *Id.* ¶ 40. It recognized that a plaintiff could plead facts that "would overcome application of the general rule that suicide is deemed unforeseeable as a matter of law." *Id.* According to the court, those allegations must include "facts demonstrating that the suicide was foreseeable, *i.e.*, that it was a likely result of the defendant's conduct." *Id*

¶ 25    The parties and the circuit court all recognize that this general suicide rule has exceptions. But the defendants and the circuit court, relying on what we view as a misreading of our previous cases, conclude that no exception can apply here. We find that such a conclusion would be at odds with several decisions of our supreme court and is not at all compelled by the cases on which defendants rely.

¶ 26    In *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 35, the court cited *Turcios*'s "general rule" and foreseeability exception and recognized that one situation in which liability could attach was where a licensed professional was offering mental health services on an outpatient basis. In *Stanphill*, a decedent's son filed suit against a licensed clinical social worker who had provided outpatient treatment to the decedent before the decedent died by suicide. *Id.* ¶ 3. The son alleged that the social worker violated her duty of care by failing to properly assess for suicidality or refer for emergent services. *Id.* He further alleged that the social worker's breach of that duty was a proximate cause leading to the decedent's death. *Id.*

¶ 27 Our supreme court addressed whether the circuit court should have presented the jury with an objective or subjective interrogatory—asking if the decedent's suicide was foreseeable to a reasonable provider or to the social worker personally. *Id.* ¶ 32. The assumption underlying this question and the supreme court's opinion was "where a plaintiff can show that the suicide was a reasonably foreseeable result of the defendant's conduct, liability will attach." *Id.* ¶ 35. Thus, *Stanphill* recognizes that suicide can be foreseeable to a provider offering mental health services and that it is not unforeseeable as a matter of law. Because *Stanphill* occurred in an entirely outpatient context, it is clear that our supreme court did not view the fact that the defendant did not have custody over the decedent as a legal bar to recovery.

¶ 28 In *Hobart v. Shin*, 185 Ill. 2d 283 (1998), the decedent died after ingesting medications prescribed by her primary care physician to treat her mental illness. *Id.* at 286-89. Our supreme court addressed whether the decedent could be contributorily negligent in her own death by suicide. *Id.* at 290. In holding that it was possible, our supreme court stated that "[t]he issue of contributory negligence of a mentally disturbed person is a question of fact; unless, of course, the evidence discloses that the person whose actions are being judged is completely devoid of reason." (Internal quotation marks omitted.) *Id.*

¶ 29 By holding that a decedent may be contributorily negligent in a tort related to her own suicide, our supreme court necessarily recognized that the alleged tortfeasor also had potential liability. As in this case, the potential liability existed for a healthcare professional providing treatment on an outpatient basis. *Id.* at 286-89.

¶ 30 In *Jinkins v. Lee*, 209 Ill. 2d 320 (2004), the defendant psychiatrist decided not to admit the decedent to a hospital, believing that the decedent was not at imminent risk of self-harm. *Id.* at 325-26. The decedent went home and shot himself in the head, dying later from the wound. *Id.*

The estate's administrator sued, alleging the psychiatrist failed to properly diagnose or treat the underlying mental illness. *Id.* at 323.

¶ 31    Our supreme court addressed whether the psychiatrist owed the decedent a duty of care arising from his role as a state employee, which would trigger the doctrine of sovereign immunity, or from his role as a healthcare provider. *Id.* at 336. In holding sovereign immunity did not apply, the court stated, "the duties inherent in the doctor-patient relationship emanate from the standards imposed by the profession itself. A physician's duty is to exercise the same degree of knowledge, skill, and care which a reasonably well qualified physician in the same or similar community would use under similar circumstances." *Id.*

¶ 32    In *Jinkins*—as in *Hobart* and *Stanphill*—our supreme court operated on the premise that mental healthcare providers owe their patients a duty of care emanating from their "mental health professional status." *Jinkins*, 209 Ill. 2d at 335. The takeaway from these cases is that a healthcare provider's malpractice *can* be a basis for liability, even where, as in those cases and in this one, the suicide occurs outside of an institutional setting.

¶ 33    Defendants argue that *Stanphill*, *Hobart*, and *Jinkins*, did not address the issue before us in this case because the defendants in those cases conceded they owed their patients a duty of care. The defendants reason that, because reviewing courts "do not address unbriefed issues," the necessary assumption that our supreme court made in arriving at those decisions does not provide any guidance.

¶ 34    Without the briefs in those supreme court cases, we cannot be sure what issues were presented. But even if we assume that the defendants conceded that they could have liability, language from an opinion is nonbinding as *obiter dictum* only where it is a "remark or opinion that a court uttered as an aside." *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010).

*Obiter dictum* is, by definition, "not essential to the outcome of the case" and "not an integral part of the opinion." *Id.* In each of the three above-cited cases, the assumption that healthcare professionals can be liable for the suicides of their outpatients cannot properly be characterized as *dictum* because it *was* an integral part of the analysis of each opinion. If, in fact, there could be no liability in an outpatient setting, then there would be no need to decide whether foreseeability was objective or subjective in *Stanphill*, or whether there could be contributory negligence in *Hobart*, or whether sovereign immunity protected the psychiatrist in *Jinkins*. The potential for liability was an integral part of the opinion.

¶ 35    Defendants counter this supreme court authority with language we used in *Doe I v. Doe I*, 2016 IL App (1st) 153272, ¶ 16, which was also relied on by the circuit court in this case. In *Doe*, we stated:

> "[O]ur supreme court has reaffirmed the proposition that the voluntary act of suicide 'is an independent intervening act which is *unforeseeable as a matter of law*, and which breaks the chain of causation from the tortfeasor's negligent conduct.' (Emphasis added [by *Doe*].) *Turcios,* 2015 IL 117962, ¶ 20 [citation shortened]. Our research has revealed only two recognized exceptions to this rule: (1) when, as the proximate result of a physical injury caused by the tortfeasor, the injured party becomes insane or bereft of reason and while in that state commits suicide [citations] and (2) when a mental health care professional who has assumed the care, custody or control over an individual with known suicidal tendencies fails to act reasonably to prevent self-inflicted harm, and the individual commits suicide (*Winger,* 299 Ill.App.3d at 374-75) [citation shortened]." *Id.*

¶ 36    *Doe* was a suit against the parents of two minors. *Id.* The minors were alleged to have fraudulently communicated to the decedent that one of the minors had a desire to end his own life.

*Id.* ¶ 2. The decedent became greatly distressed and died by suicide. *Id.* The decedent's representative sued, arguing the fraudulent communications negligently caused the death. *Id.* ¶ 3. Using the above-quoted rule, we held that the suicide was an intervening and independent action that broke the chain of causation. *Id.* ¶ 16.

¶ 37    *Doe* does not address healthcare malpractice in any way. The quotation above is an accurate description of the general rule that suicide is an independent act by the decedent that is not foreseeable as a matter of law. It says nothing directly about foreseeability or liability in the mental healthcare context.

¶ 38    To the extent that *Doe* says anything about liability in the healthcare context, it does so by citing *Winger*, 299 Ill. App. 3d at 374-75. According to defendants, until *Winger*, Illinois courts recognized only one exception to the suicide rule—when, due to the defendant's actions, the injured party became insane, and for that reason took her own life. Defendants' argument is that *Winger* created the only other exception to this "black letter" rule when the mental healthcare professional assumes the custody or control of the individual.

¶ 39    In *Winger*, the victim was hospitalized for suicidality and died by hanging himself with his shoelaces. *Id.* at 366. His parents sued the hospital and attending psychiatrist for wrongful death. *Id.* at 367-68. This court held that the defendants owed a duty to "act reasonably to prevent self-inflicted harm." *Id.* at 375. While we agree that *Winger* specifically recognizes an exception, in the context of inpatient care, to the general rule that suicide is unforeseeable as a matter of law, we disagree that the case should be read to bar any liability for professionals treating outpatients.

¶ 40    When discussing mental illness, the *Winger* court used broad language that is equally applicable here:

    "Where it is reasonably foreseeable that a patient by reason of his mental or emotional

illness may attempt to injure himself, those in charge of his care owe a duty to safeguard him from his self-damaging potential. This duty contemplates the reasonably foreseeable occurrence of self-inflicted injury regardless of whether it is the product of the patient's volitional or negligent act." (Internal quotation marks omitted.) *Id.* at 374.

¶ 41    The *Winger* court went on to describe Illinois's conception of mental illness. *Id.* Unlike with other illnesses, where a patient's noncompliance with treatment usually exculpates the provider if harm results, *Winger* recognizes that a measure of noncompliance may be expected when treating certain mental illnesses. *Id.* As we stated, "the patient, by the nature of his illness, may be working at cross-purposes to his doctor's suggestions." (Internal quotation marks omitted.) *Id.* at 372. Inasmuch as *Winger* provides guidance, it recognizes that suicide is not necessarily an independent and intervening act in the context of mental healthcare.

¶ 42    Defendants insist that *Winger* must be cabined to the inpatient context because we described the doctor-patient relationship there as a "special relationship." *Id.* at 374. They then claim we used these two words as a term of art, implicitly referencing the Second Restatement of Torts. Restatement (Second) of Torts § 314A (1965). The Second Restatement recognizes only four types of "special relationships," one of which is a "voluntary custodian." *Id.* Defendants therefore argue that *Winger* only applies in custodial contexts.

¶ 43    But we did not cite this section of the Restatement in *Winger*, 299 Ill. App. 3d at 374. Nor is there any reason to think that we used the phrase "special relationship" as a term of art that was meant to conform to the four special relationships listed in the restatement. The rationale of *Winger* supports plaintiff's claim that there can be liability in this case, and nothing in the holding or the language of that case suggests otherwise.

¶ 44    We also think it is significant that, in the *Doe* court's description of *Winger*, it referenced

"a mental health care professional who has assumed the *care*, custody *or* control over an individual." (Emphases added.) *Doe I*, 2016 IL App (1st) 153272, ¶ 16. Since "care, custody or control" are stated in the alternative, "care" of a patient could certainly include outpatient care. We do not, therefore, read *Doe* to say that the second exception noted there is limited to inpatient care.

¶ 45 In any event, to the extent that either of these appellate court cases suggest that suicide is unforeseeable as a matter of law in the context of mental health treatment unless the defendant is hospitalized, we disagree and find such a statement at odds with the supreme court cases cited above. See *supra* ¶¶ 26-34.

¶ 46 Cases outside of Illinois go both ways. Defendants cite cases from jurisdictions that have applied the "suicide rule" to preclude liability for outpatient mental healthcare providers. See, *e.g.*, *Lee v. Corregedore*, 925 P.2d 324, 337 (Haw. 1996) ("Regardless of whether [the decedent's] suicide was foreseeable, it would be inappropriate to impose a duty on counselors to prevent suicides—which might stifle all such counseling \*\*\*."); *Christian v. Counseling Resources Associates*, No. N09C-10-202 EMD, 2014 WL 4100681, at \*10 (Del. Super. Ct. July 16, 2014) ("there is not sufficient evidence in the record of either custody or control over [the decedent] to find that a special relationship existed that would trigger the duty to act").

¶ 47 There are also a number of cases that find that liability is possible in this context. For example, in *Kockelman v. Segal*, 71 Cal. Rptr. 2d 552, 555 (Ct. App. 1998), the California appellate court addressed this issue as follows:

"[Mental health providers] owe a duty of care, consistent with standards in the professional community, to provide appropriate treatment for a potentially suicidal patient, whether the patient is hospitalized or not. \*\*\*

\* \* \*

*** If those who are caring for and treating mentally disturbed patients know of facts from which they could reasonably conclude that the patients would be likely to inflict harm on themselves in the absence of preventative measures, then those caretakers must use reasonable care under the circumstances to prevent such harm from occurring." (Internal quotation marks omitted.) *Id.* at 558, 561.

¶ 48    In *Morris v. Corder*, 866 S.E.2d 66, 67 (W. Va. 2021), West Virginia's supreme court determined that "[i]t would defy logic" to impose liability only in the inpatient setting. *Id.* at 71. Providers could thereby avoid responsibility by refusing to involuntarily hospitalize or admit suicidal clients and then argue that liability could not attach "on the basis that the patient *was not admitted*." (Emphasis in original.) *Id.*; see also *Perez v. United States*, 883 F. Supp. 2d 1257, 1286 (S.D. Fla. 2012) ("[I]t would be peculiar, and seemingly contrary to the intent of Florida's law on medical negligence, to absolve a treating psychiatrist of liability for all negligent acts simply because the patient is being seen on an outpatient basis."); *Smits as Trustee for Short v. Park Nicollet Health Services*, 979 N.W.2d 436, 447 (Minn. 1997) ("We will not absolve [the defendant] of the duty to meet the standard of care because its patient committed suicide."); *Edwards v. Tardif*, 692 A.2d 1266, 1270 n.7 (Conn. 1997) ("In our view, the circumstances in which a physician may be liable for a patient's suicide are not limited only to when the patient is in the physician's custody"); *Champagne v. United States*, 513 N.W.2d 75, 76-77 (N.D. 1994) ("[i]f the patient's act of suicide is a foreseeable result of the medical provider's breach of duty to treat the patient, the patient's act of suicide cannot be deemed a superseding cause of the patient's death that breaks the chain of causation between the medical provider and the patient, which absolves the medical provider of liability").

¶ 49    We find the latter group of cases are in keeping with Illinois law, which also recognizes

that a mental health professional can have liability in an outpatient context. Thus, the circuit court erred in holding that defendants were entitled to judgment as a matter of law.

¶ 50                               B. Defendants' Alternative Argument

¶ 51     As an alternative basis to affirm, defendants argue plaintiff "failed to produce evidence of a *prima facie* negligence claim sufficient to present to a jury." Defendants are, of course, correct that ultimately the plaintiff will have the burden of proving all elements of her claims. As a general rule, "expert testimony is necessary in professional negligence cases to establish the standard of care and that its breach was the proximate cause of the plaintiff's injury." *Snelson v. Kamm*, 204 Ill. 2d 1, 43-44, (2003). Defendants contend that plaintiff has failed to make a timely disclosure of the necessary experts. Defendants also contend that the record contains no evidence of the standards of care, the precise nature of any breach or of the causal connection between any action by a defendant and Mr. Melnyk's suicide. These alleged deficiencies may prove fatal, but they are simply not before us given the nature of the motion that defendants filed.

¶ 52     Defendants first raised this alternative argument in the reply memorandum in support of their summary judgment motion. Defendants did not seek at that point to expand their motion and neither plaintiff (who had already filed her response to the motion) nor the circuit court ever addressed this argument.

¶ 53     A defendant moving for summary judgment has the initial burden of production, which can be met by either (1) introducing evidence that, if uncontroverted, would disprove the plaintiff's case (see *Purtill v. Hess*, 111 Ill. 2d 229, 240-41 (1986)), or (2) establishing that a lack of evidence will prevent the plaintiff from proving an essential element of the cause of action (*CZ Driving Horses, Inc. v. Horse Powered Equestrian, Inc.*, 2022 IL App (3d) 190509, ¶ 41). When this second kind of motion, sometimes described as a "*Celotex*" motion (see *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986)) is filed, the burden then shifts to the plaintiff to show a factual basis to support the elements of her claim. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000).

¶ 54    As we have made clear, "[t]he grounds for summary judgment should be pleaded with sufficient specificity to alert the opposing party to what he must answer and the trial judge to what he may be expected to pass on." *Tongate v. Wyeth Laboratories*, 220 Ill. App. 3d 952, 956 (1991). Only where a defendant files a motion for summary judgment based on a lack of evidence, *i.e.*, a *Celotex* motion, is the plaintiff obligated to come forward with evidence on all aspects of the claim. See *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 689 (2000) ("Only if a defendant satisfies its initial burden of production does the burden shift to the plaintiffs to present some factual basis that would arguably entitle them to a judgment under the applicable law."); *Hallmark Insurance Co. v. Chicago Transit Authority*, 179 Ill. App. 3d 260, 264, 267 (1989) (where a moving defendant fails in showing there was no genuine issue of material fact to try, plaintiffs "had no duty to present evidence in support of their allegations").

¶ 55    Here, the only argument defendants made in their motion for summary judgment was that the decedent's suicide was unforeseeable as a matter of law. Plaintiff responded to this argument, and the circuit court decided the motion on that basis. Plaintiff was under no obligation to submit any affidavits or other evidence to support all elements of her cause of action.

¶ 56    At oral argument, defendants cited cases not cited in their brief which they contend allow us to consider this argument. Those cases offer no support to defendants here. In *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 34, our supreme court affirmed the circuit court's grant of summary judgment for the defendant on the basis that there was no evidence that the park district's conduct was willful and wanton. In *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 641

(2002), we reversed a grant of summary judgment based on the same point that we repeat here: that a "defendant meets its burden by producing evidence that would clearly entitle the defendant to judgment as a matter of law" and "[o]nly if defendant[] satisf[ies] [this] initial burden of production does the burden shift to [the plaintiff] to present some factual basis that would arguably entitle them to a favorable judgement." (Internal quotation marks omitted.) Neither of these cases suggest in any way that this court should consider defendants' alternative argument or comb the record to see if plaintiff can prove her case.

¶ 57    While alternative arguments are certainly permitted, and we can affirm on any basis present in the record (*City of Chicago v. Holland*, 206 Ill. 2d 480, 491-92 (2003)), the record in this case discloses that there was no obligation on the part of the plaintiff to provide evidence of the standard of care, the precise nature of any breach, or the alleged causal connection between the two. This argument offers us no "alternative" basis on which to affirm.

¶ 58                                    IV. CONCLUSION

¶ 59    For the forgoing reasons, we reverse the circuit court's grant of summary judgment in favor of defendants and remand for proceedings consistent with this opinion.

¶ 60    Reversed and remanded.

*O'Donnell v. Bailey & Associates Counseling & Psychotherapy LLC*,
**2023 IL App (1st) 221736**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-L-7393; the Hon. Daniel A. Trevino, Judge, presiding. |
| **Attorneys for Appellant:** | Milo W. Lundblad, of Brustin & Lundblad, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Lawrence S. Gosewisch and Richard C. Harris, of Hinshaw & Culbertson LLP, Gretchen Harris Sperry, of Gordon Rees Scully Mansukhani LLP, Scott L. Howie, John M. McGarry, and Zachary A. Kutsulis, of Donohue Brown Mathewson & Smyth LLC, and Thomas B. Orlando and Douglas J. Palandech, of Foran Glennon Palandech Ponzi & Rudloff PC, all of Chicago, for appellees. |