2026 IL App (3d) 250239

Opinion filed January 30, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| ARACELI SALINAS and LORENA SERVIN, Individually and on Behalf of Other Persons Similarly Situated, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | Appeal No. 3-25-0239 |
| | ) | Circuit No. 22-LA-152 |
| ARTHUR SCHUMAN MIDWEST, LLC; SURESTAFF, LLC; and METROSTAFF INCORPORATED, | ) ) ) | |
| | ) | The Honorable |
| | ) | David E. Schwartz, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Presiding Justice Hettel and Justice Holdridge concurred in the judgment and opinion.
_____

**OPINION**

¶ 1     This is a putative class action involving the Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2022)). In January 2025, the circuit court granted summary judgment for defendants Surestaff, LLC, and Metrostaff, Inc., finding no basis to conclude that a violation occurred under section 15(b) of the Act. See *id.* § 15(b). Plaintiffs appeal, arguing that summary

judgment was improper and that they ought to have been permitted discovery. We affirm the circuit court's orders granting summary judgment and denying discovery.

¶ 2                                                    I. BACKGROUND

¶ 3        Plaintiffs, Araceli Salinas and Lorena Servin, worked at a food manufacturing facility in Elgin, Illinois, operated by Arthur Schuman Cheese, LLC (Schuman). Schuman contracted with Paycom Payroll, LLC (Paycom), to lease and install biometric time clocks to be used by workers at the Elgin facility. Both named plaintiffs were placed at Schuman, separately, by one of the defendant staffing agencies: Salinas by Surestaff and Servin by Metrostaff (collectively, the Staffing Agencies). Plaintiffs allege that the Staffing Agencies collected their fingerprints through the use of biometric time clocks, without proper notice and consent, in violation of section 15 of the Act (*id.* § 15). After several iterations of pleading, plaintiffs' third amended complaint (TAC) is the operative pleading before us and alleges: count I—violation of section 15(a) (*id.* § 15(a)) (against Schuman); count II—violation of section 15(b) (*id.* § 15(b)) (against Schuman, Surestaff, and Metrostaff); count III—violation of section 15(d) (*id.* § 15(d)) (against Schuman); count IV—violation of section 15(e) (*id.* § 15(e)) (against Schuman); and count V—injunctive relief (against Schuman, Surestaff, and Metrostaff). Only the count II claims against the Staffing Agencies are before us today.

¶ 4        The TAC alleges that Schuman was the exclusive possessor of the biometric time clocks under its lease with Paycom and that Schuman decided to install biometric time clocks at its facility. Plaintiffs further allege that Schuman had exclusive authority to require the use of the biometric time clocks and that neither Paycom, Surestaff, nor Metrostaff could dictate their use. Plaintiffs claim biometric information was stored on the time clocks and transferred by Schuman to Paycom's cloud-based servers. Plaintiffs further allege that the Staffing Agencies would enroll

2

workers in the time clock system and then instruct and monitor a worker's use of Schuman's biometric time clocks. This monitoring was done to track workers' hours.

¶ 5     The Staffing Agencies both moved for summary judgment on the single count against them for a violation of section 15(b) of the Act. For purposes of the motion, the Staffing Agencies did not dispute that they had enrolled their employees in the biometric time clock system and instructed them in their use. The Staffing Agencies submitted affidavits in support of their motions, stating that (1) Schuman required all the Staffing Agencies' employees who performed work at its facility to clock in and out using the biometric time clocks; (2) Schuman had exclusive possession of the biometric data from the time clocks and the Staffing Agencies could not access or control the data; and (3) Schuman had granted the Staffing Agencies only limited administrative access to enroll and correct employees' time records. The Staffing Agencies argued that the limited functions they were allowed to perform could not, as a matter of law, be interpreted as the Staffing Agencies having collected, captured, purchased, received, or otherwise obtained biometric information within the meaning of section 15(b) of the Act.

¶ 6     Rather than immediately responding to the Staffing Agencies' summary judgment motions, plaintiffs sought leave to conduct discovery under Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013). Plaintiffs argued that Schuman and the Staffing Agencies had offered conflicting statements as to which entity directed and controlled the use of the biometric time clocks and discovery was necessary to explore the facts on that issue prior to summary judgment briefing. The Staffing Agencies argued that plaintiffs' TAC expressly pled that Schuman possessed and controlled the use of the biometric time clocks. Further, the Staffing Agencies contended that fact discovery regarding which entity required the *use* of the time clocks would not address the dispositive legal

3

question of whether the Staffing Agencies' administrative access constituted collection under section 15(b) of the Act.

¶ 7 The circuit court denied plaintiffs' motion to conduct discovery, finding that discovery was unnecessary for purposes of determining whether the Staffing Companies obtained biometric data from the time clocks. The circuit court directed plaintiffs to respond to the motions for summary judgment.

¶ 8 In January 2025, the circuit court granted the Staffing Agencies' motions for summary judgment. The court found that there was no dispute that the Staffing Agencies did not possess, could not access, and had no control over the biometric data in the time clocks or the data in Paycom's servers. The court further held that the Staffing Agencies' limited use and access— consisting of only non-biometric data—was insufficient to establish a question of fact regarding liability under section 15(b) of the Act.

¶ 9 In April 2025, the trial court granted plaintiffs' request for an Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding, and plaintiffs appealed. Claims against Schuman remain pending in the circuit court after denial of its motion to dismiss, and some limited discovery has been allowed in that court.

¶ 10 II. ANALYSIS

¶ 11 Plaintiffs seek reversal of the trial court's orders denying their request for discovery prior to summary judgment briefing under Rule 191(b) and granting summary judgment to the Staffing Agencies. Plaintiffs' sole claim against each of the Staffing Agencies was for a violation of section 15(b) of the Act, as well as related injunctive relief. See 740 ILCS 14/15(b) (West 2022). Because the need and scope of the requested discovery are dependent on legal issues related to the summary

judgment decision, we will address the grant of summary judgment first and then the denial of discovery.

¶ 12                                    A. Summary Judgment

¶ 13        The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits—when viewed in the light most favorable to the nonmoving party—show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2022); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute, but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* We review summary judgment rulings *de novo*. *Id.*

¶ 14        Plaintiffs' claims against the Staffing Agencies are predicated on section 15(b) of the Act. Section 15(b) states as follows:

>    "§ 15. Retention; collection; disclosure; destruction.
>
>    ***
>
>    (b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's *** biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject *** in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information ***." 740 ILCS 14/15(b) (West 2022).

¶ 15 The Illinois Supreme Court has analyzed what it means to collect, capture, or obtain biometric information. See *Cothron v. White Castle System, Inc.*, 2023 IL 128004, ¶ 23. In *Cothron*, the court looked to the dictionary to conclude that "collect" means "to receive, gather, or exact from a number of persons or other sources" and that "capture" means "to take, seize, or catch." (Internal quotation marks omitted.) *Id.*; see also *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶¶ 58-59. The *Cothron* court also stated that "[t]he active verbs used in section 15(b)—collect, capture, purchase, receive, and obtain—all mean to gain control" and made it clear in its analysis of 15(b) that the defendant had gained control of the biometric information obtained in finding a violation accrued with each collection. *Cothron*, 2023 IL 128004, ¶¶ 16, 23. The TAC and unrebutted affidavits demonstrate that the Staffing Agencies never possessed or gained control of any biometric data.

¶ 16 Plaintiffs argue that the Staffing Agencies' actions in enrolling, instructing, and monitoring time clocks usage still implicate section 15(b) because that particular section does not require that the entity have possession of the biometric data. In contrast, other sections of the Act specifically

6

reference an entity "in possession" of biometric information. See 740 ILCS 14/1 *et seq.* (West 2022). Plaintiffs basically argue that the absence of an "in possession" requirement in section 15(b) broadens that section's sweep to include those who did not come into possession of biometric data. In other words, plaintiffs' theory of liability under section 15(b) is that the Staffing Agencies need not obtain possession of the biometric data by being able to access or control the use of the data. Rather, they contend it is enough that their acts facilitated or acted as a conduit relative to data collection.

¶ 17　　We reject this rationale. First, coming into "possession" of something means it was "obtained" or "received." There is no material distinction in these terms, and plaintiffs' theory stretches section 15(b) beyond its text.

¶ 18　　Second, courts have rejected similar arguments where a party played a passive or ministerial role in connection with the use of biometric identifying devices. For example, in *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, the appellate court analyzed the Act's use of the words "possession," "collect," and "capture" in deciding whether a 15(b) claim had been stated. That case involved the use of biometric identifiers on mobile phones. The court held that, as pled in the complaint, Apple could not be found to have "possessed, captured, or collected plaintiffs' biometric information" because it could not access, and did not control the use of, the biometric data; rather, the data was stored on the phone and accessible only to the user. *Id.* ¶¶ 57-58.

¶ 19　　A similar case involving mobile phones was litigated in *G.T. v. Samsung Electronics America, Inc.*, 760 F. Supp. 3d 665, 669-70 (N.D. Ill. 2024). There, and with the liberal "notice pleading" of federal court, the court held no proper 15(b) claim was pled because the defendant had no access or control of biometric information. *Id.* The court observed that while Samsung

7

makes phones with facial recognition features, that biometric data is stored on the phone and is not received or controlled by Samsung. *Id.*

¶ 20    Each operative verb in section 15(b) presupposes that a defendant acquires the biometric data, not merely that its conduct facilitates another entity's acquisition. In other words, section 15(b) regulates acquisition of biometric data; not proximity to it. There might be circumstances where a conduit theory might be persuasive, such as if one of the entities in this case controlled another. See *Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1036-37 (N.D. Ill. 2023) (company's right to control actions of other entity in collecting, capturing, or obtaining biometric data relevant to vicarious liability claim); *Wordlaw v. Enterprise Leasing Co. of Chicago, LLC*, No. 20 CV 3200, 2020 WL 7490414, at *6 (N.D. Ill. Dec. 21, 2020) (company's direction or controlling of other company relevant to joint-employer and direct-participant liability theories). We do not reach that question, as plaintiffs make no allegations that the Staffing Agencies and Schuman are corporately related, vicariously liable, or joint employers.

¶ 21    In short, there is no evidence—or even allegation—that the Staffing Agencies collected or obtained biometric data through the use of the time clocks. The Staffing Agencies' conduct in requiring or implementing the use of the biometric time clocks, when the data was collected by a different entity, is insufficient to trigger section 15(b) liability in this case, based on the statutory language. We conclude that plaintiffs have failed to identify a question of material fact as to whether the Staffing Agencies violated section 15(b). We agree with the trial court's determination that plaintiffs cannot prove the essential elements of a section 15(b) claim, and therefore summary judgment was proper.

¶ 22                                                    B. Discovery

¶ 23          Plaintiffs nonetheless argue that they might have been able to establish their claims had they been permitted discovery. On that issue, there is a threshold dispute as to whether the summary judgment motion was a traditional one or a *Celotex*-type. See *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

¶ 24          The determination of whether a summary judgment motion is a traditional one or a *Celotex*-type depends on the way the movant seeks to overcome its initial burden of production. If the movant seeks to introduce "evidence that, if uncontroverted, would disprove the plaintiff's case," the motion is a traditional one. *O'Donnell v. Bailey & Associates, Counseling & Psychotherapy LLC*, 2023 IL App (1st) 221736, ¶ 53. In a traditional motion, the movant seeks to affirmatively disprove an element of the nonmovant's case. *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 25. If, on the other hand, the motion seeks to establish that the plaintiff cannot prove an essential element of the case due to a lack of evidence, it is a "*Celotex* motion." *O'Donnell*, 2023 IL App (1st) 221736, ¶ 53.

¶ 25          In a *Celotex* motion, the movant must show that the evidence available to the plaintiff, even when viewed in its entirety, is insufficient to prove the critical allegations as a matter of law. See *id.* In other words, a *Celotex* motion relies on the plaintiff's demonstrated inability to prove its own case. *Department of Financial & Professional Regulation v. Walgreen Co.*, 2012 IL App (2d) 110452, ¶ 22. "When this second kind of motion *** is filed, the burden then shifts to the plaintiff to show a factual basis to support the elements of their claim." *O'Donnell*, 2023 IL App (1st) 221736, ¶ 53 (citing *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000)).

¶ 26        In Illinois, a successful *Celotex*-type summary judgment motion "requires more than merely pointing out the absence of evidence, without a supporting affidavit or other evidence." *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 365 (2006). A successful movant must also affirmatively show that the plaintiff is unable to obtain the evidence needed to sustain its case. *Id.* at 369. Because a *Celotex* motion relies on the nonmovant's proven lack of evidence, it is proper only when the nonmovant has had sufficient opportunity for discovery. *Id.*

¶ 27        The distinction between the two is often relevant because, in cases involving a *Celotex*-type motion, "strict compliance with Rule 191(b)'s affidavit requirement *** is not automatically necessary." *Jiotis*, 2014 IL App (2d) 121293, ¶ 26. Instead, "[t]he trial court has discretion to permit a continuance for discovery without compliance with Rule 191(b)," in part, because "it is 'critical that the respondent be given a reasonable opportunity to conduct discovery before summary judgment is rendered against him or her." *Id.* ¶ 27 (quoting 4 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 38.4 (2d ed. 2012)); see *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 691-92 (2000) (reversing trial court's granting of summary judgment, in part, because "a [nonmovant] should be given adequate time to gather evidence" and "a [nonmovant] should not be required to comply with Rule 191(b) when a [movant] files a premature *Celotex*-type motion").

¶ 28        The motion here reads like a traditional summary judgment motion to us. However, in this particular case, we do not see the distinction as being relevant because, either way, the trial judge acted within his discretion in rejecting the discovery requests. See *Hayward v. C.H. Robinson Co.*, 2014 IL App (3d) 130530, ¶ 45 (a trial judge's decision on the scope of discovery is typically reviewed on an abuse of discretion standard).

10

¶ 29    Section 15(b) requires plaintiffs to show that the Staffing Agencies collected, captured, or obtained biometric data. See 740 ILCS 14/15(b) (West 2022). The summary judgment motion offered proof that affirmatively disproved this requirement. Plaintiffs based their claims not on allegations of actual collection or possession of data, but, rather, on the ministerial implementation of the time clock system. Plaintiffs admitted in their arguments that Schuman (and not the Staffing Agencies) possessed the data and could access or control its use. Further, to the extent more discovery was requested by plaintiffs, it was not requested on the issue of direct access and control of the data. Rather, the discovery sought mainly involved whether the Staffing Agencies implemented or required the use of the time clock—actions that we conclude are not tantamount to collecting or obtaining biometric data. There being no material issue of fact raised on this required element of plaintiffs' claim, the grant of summary judgment is appropriate, and no further discovery would have been helpful or necessary.

¶ 30                                   III. CONCLUSION

¶ 31    While the Biometric Information Privacy Act is a statute that wields the impact of a grenade, it does not impose liability on everyone who happens to be standing nearby. The trial judge correctly found that the Staffing Agencies did not violate section 15(b) and justifiably determined that discovery would likely not alter that conclusion. For the reasons stated, the orders of the circuit court of Du Page County, granting summary judgment and denying discovery, are affirmed.

¶ 32    Affirmed.

11

| | |
|---|---|
| *Salinas v. Arthur Schuman Midwest, LLC*, 2026 IL App (3d) 250239 | |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 22-LA-152; the Hon. David E. Schwartz, Judge, presiding. |
| **Attorneys for Appellant:** | Roberto Luis Costales and William H. Beaumont, of Beaumont Costales LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Joseph T. Charron Jr., of Baker & McKenzie LLP, and Peter J. Gillespie and Samantha Damewood, of Laner Muchin, Ltd., both of Chicago, for appellees Surestaff, LLC, and Metrostaff Inc. <br><br> No brief filed for other appellee. |